Filed 4/26/13  P. v. Sharif CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ABDULAZIZ AHMED SHARIF,<br><br>    Defendant and Appellant. | D061508<br><br><br><br>(Super. Ct. No. SCD232282) |


APPEAL from a judgment of the Superior Court of San Diego County, Leo Valentine, Jr., Judge.  Affirmed in part, reversed in part, and remanded with directions.

Following a mistrial due to a deadlocked jury, a second jury found Abdulaziz Ahmed Sharif guilty of unlawfully taking or driving a vehicle.  At the sentencing hearing on March 5, 2012, the court placed Sharif on three years of formal probation and suspended imposition of sentence for that period of time, but committed him to the custody of the San Diego County Sheriff's Department for 365 days.  The court imposed a total of $1,264 in fines, fees, and assessments, including a restitution fine imposed under section Penal Code section 1202.4, subdivision (b) (hereafter § 1202.4(b);

undesignated statutory references are to the Penal Code) in the amount of $240. The court also determined that Sharif, who was arrested on February 4, 2011, was entitled to a total of 594 days of credit for time served in local presentence custody, consisting of 396 days of credit for time actually served, plus 198 days of conduct credit under the former version of section 4019 in effect when Sharif committed his offense the day before he was arrested, and which allowed him to earn one day of conduct credit for every *two* days he actually served in local presentence custody.

Sharif appeals, contending (1) the court miscalculated his presentence custody credits and should have awarded him an additional 78 days of conduct credit (for a total of 672 days of presentence custody credit) because it erroneously failed to use a "hybrid" calculation method he claims the court was required to use following the October 1, 2011 operative date of an amendment to section 4019 that resulted in a more favorable conduct credit accrual rate; (2) the court erred when it failed to apply to his fines and fees, on a proportional basis and at the statutory rate of not less than $30 per day of credit, the monetary credit (discussed, *post*) resulting from the excess of his total presentence custody credits over his 365-day jail term, as required by section 2900.5, subdivision (a) (hereafter § 2900.5(a)); (3) the $240 restitution fine imposed under section 1202.4(b) violates the ex post facto clauses of the federal and state Constitutions because he committed the current offense before January 1, 2012, the date when the amount of the fine increased from $200 to $240; and (4) the court erred in imposing alcohol-related conditions of probation because they are not reasonably related to his offense or future criminality.

The Attorney General concedes the court erroneously failed to apply to the fines the monetary credit resulting from Sharif's excess presentence custody credits, as required by section 2900.5(a).

We reverse the judgment to the extent that the amounts of the base fines, penalty assessments, and restitution fines the court imposed at sentencing have not been reduced on a proportional basis by the monetary credit resulting from the excess of Sharif's total presentence actual and good conduct custody credits over his 365-day jail term, in accordance with the provisions of section 2900.5(a) and the methodology set forth in *People v. McGarry* (2002) 96 Cal.App.4th 644 (*McGarry*). We affirm the judgment in all other respects and remand the matter to the superior court with directions.

FACTUAL BACKGROUND[1]

Early in the evening on February 3, 2011, Sharif got into a Cadillac at a Budget Rent-A-Car and drove away in it without permission. The car was tracked by On Star and recovered. A witness and surveillance tapes identified Sharif, who was arrested the next day, February 4, after he returned to the same rental car office. At the time of his arrest, Sharif made a spontaneous statement indicating he did not have the car key because the car had an automatic start.

---

[1]    The following factual background is derived from the probation report because the facts underlying Sharif's offense crime are not relevant to the issues he raises in this appeal.

3

## I. *PRESENTENCE CUSTODY CREDITS*

Sharif first contends the court miscalculated his presentence custody credits and should have awarded him an additional 78 days of conduct credit (for a total of 672 days, not 594 days, of presentence custody credit) because it erroneously failed to use a hybrid calculation method he claims the court was required to use to calculate his credits for the presentence custody time he served on and after October 1, 2011, the operative date of an amendment to section 4019 that increased the conduct credit accrual rate from one day of conduct credit for every *two* days actually served—which the parties agree was the accrual rate that applied to the presentence custody time he served from the time of his arrest on February 4, 2011, to October 1, 2011, the operative date of the statutory amendment—to one day of conduct credit for every *one* day actually served. Specifically, Sharif contends the court erroneously failed to apply this more favorable one-for-one conduct credit accrual rate to the presentence custody time he served between October 1, 2011, and the date of his sentencing in this matter, March 5, 2012. We reject these contentions and conclude the court properly calculated Sharif's presentence custody credits.

A. *General Legal Principles and History of Amendments to Section 4019*

1. *Accrual of presentence custody credit*

A defendant is entitled to actual custody credit for "all days of custody" in county jail and residential treatment facilities. (§ 2900.5, subd. (a); *People v. Buckhalter* (2001) 26 Cal.4th 20, 30 (*Buckhalter*) ["Everyone sentenced to prison for criminal conduct is entitled to credit against his [or her] term for all actual days of [presentence] confinement

4

solely attributable to the same conduct."].)  Calculation of custody credit begins on the day of arrest and continues through the day of sentencing.  (*People v. Bravo* (1990) 219 Cal.App.3d 729, 735.)

Under section 4019, a defendant may also earn "conduct credit" (also known as "good behavior" credits) against his or her sentence for good behavior (i.e., compliance with rules and regulations) and satisfactory performance of any labor assigned to him or her during presentence custody.  (§ 4019, subds. (b), (c); *People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3; *Buckhalter*, *supra*, 26 Cal.4th at p. 30.)

The California Supreme Court has explained that when a trial court imposes a sentence, it "has responsibility to calculate the exact number of days the defendant has been in custody 'prior to sentencing,' add applicable good behavior credits earned pursuant to section 4019, and reflect the total in the abstract of judgment."  (*Buckhalter*, *supra*, 26 Cal.4th at p. 30.)

*Amendments to Section 4019*

Section 4019 has been amended in recent years, increasing or decreasing the rate at which defendants can earn conduct credits while in presentence custody.  The convoluted history of these amendments, as pertinent here, was recently discussed in *People v. Rajanayagam* (2012) 211 Cal.App.4th 42 (*Rajanayagam*):

"Before January 25, 2010, under section 4019, defendants were entitled to one-for-two conduct credits, which is two days for every four days of actual time served in presentence custody.  [Citation.]  Effective January 25, 2010, the Legislature amended section 4019 to accelerate the accrual of presentence conduct credit such that certain

5

defendants earned one-for-one conduct credits, which is two days of conduct credit for every two days in custody. [Citation.] The Legislature increased the accrual rate to reduce expenditures in response to Governor Arnold Schwarzenegger's declaration of a fiscal emergency. [Citations.]

"Effective September 28, 2010, the Legislature again amended section 4019. [Citation.] Subdivisions (b) and (g) restored the less generous one-for-two presentence conduct credit calculation that had been in effect prior to the January 25, 2010, amendment. Thus, all local prisoners could earn two days of conduct credit for every four days in jail. The Legislature restored the conduct credits to one-for-two because the increased conduct credits reduced available jail time and undercut the effort to provide an adequate custodial alternative to prison. [Citation.]

"The Legislature next amended section 4019 in Assembly Bill No. 109 . . . , which was part of the [Criminal Justice] Realignment Act [of 2011]. The Legislature's stated purpose for the Realignment Act 'is to reduce recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending.' [Citations.] Assembly Bill No. 109 authorized conduct credit for all local prisoners at the rate of two days for every two days spent in local presentence custody. (§ 4019, subds. (b) & (c), as amended by Stats. 2011, ch. 15, § 482, eff. April 4, 2011, operative Oct. 1, 2011.) The Legislature declared, 'It is the intent of the Legislature that if all days are earned under this section, a term of four days will be deemed to have been served for every two days spent in actual custody.' (§ 4019, subd. (f), as amended by Stats. 2011, ch. 15, § 482.) Assembly Bill No. 109 described its prospective nature and effective date

6

of the new presentence conduct credit calculations standards: 'The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail . . . for a crime committed on or after July 1, 2011. Any days earned by a prisoner prior to July 1, 2011, shall be calculated at the rate required by the prior law.' [Citation.] . . . .

"Before Assembly Bill No. 109's operative date of July 1, 2011, Governor Brown signed Assembly Bill No. 117[, which] retained the enhanced conduct credit provision but . . . changed the effective date to October 1, 2011. [Citation.]

"On September 20, 2011, Governor Brown signed Assembly Bill No. 1X 17 (2011–2012 1st Ex.Sess.) (hereafter referred to as Assembly Bill No. 1X 17), which was enrolled by the Secretary of State on September 21, 2011. (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 35.) Assembly Bill No. 1X 17 is the current version of section 4019. Assembly Bill No. 1X 17 again retained the enhanced conduct credit provision— four days is deemed to have been served for every two days spent in actual custody. (§ 4019, subd. (f).) As relevant here, section 4019, subdivision (h) (hereafter referred to as section 4019(h) or subdivision (h)), provides: 'The changes to this section enacted by the act that added this subdivision *shall apply prospectively* and *shall apply to prisoners who are confined to a county jail . . . for a crime committed on or after October 1, 2011.* Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law.'" (*Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 48-50, italics added.)

7

B. *Analysis*

The question presented is whether Sharif is entitled to an additional 78 days of conduct credit—under the 2011 amendment to section 4019 that became operative on October 1, 2011—for the period of presentence custody he served between that date and his sentencing on March 5, 2012, even though he committed his current offense before October 1, 2011. We conclude section 4019 as amended expressly and plainly applies only to prisoners who committed their current crimes "on or after October 1, 2011" (§ 4019(h)); and, thus, Sharif is not entitled to these additional conduct credits because the more favorable accrual rate provided by the 2011 amendment (one day of conduct credit for one day of presentence custody actually served) does not apply to a defendant like Sharif who committed his crime before October 1, 2011.

In reaching this conclusion, we apply to amended section 4019, and particularly subdivision (h) of that section, well-established principles of statutory construction. The California Supreme Court has explained that, in construing the relevant provisions of a statute, "we strive to ascertain and effectuate the Legislature's intent.' [Citations.] Because statutory language 'generally provide[s] the most reliable indicator' of that intent [citations], we turn to the words themselves, giving them their 'usual and ordinary meanings' and construing them in context [citation]. ' "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' " ' " (*People v. Castenada* (2000) 23 Cal.4th 743, 746-747.) "The interpretation of a statute presents a question of law subject to de novo appellate review." (*People v. Wills* (2008) 160 Cal.App.4th 728, 736.)

8

Here, the first sentence of section 4019(h) states:

> "The changes to this section enacted by the act that added this subdivision shall apply *prospectively* and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp *for a crime committed on or after October 1, 2011*."  (Italics added.)

After indicating that the "changes" to section 4019, which include the more favorable conduct credit accrual rate, apply "prospectively," subdivision (h)'s first sentence explicitly and plainly states that those changes apply only to defendants whose crimes were committed "on or after October 1, 2011."  (§ 4019(h).)  Thus, by the plain language of subdivision (h)'s first sentence, section 4019 as amended would not apply to Sharif because he committed his crime before October 1, 2011.  Thus, the first sentence supports the conclusion that Sharif is not entitled to conduct credit at the more favorable accrual rate provided by the 2011 amendment.

The second sentence of subdivision (h) introduces some confusion into the matter, as we now discuss, but the application of well-established principles of statutory construction supports our conclusion that Sharif is not entitled to enhanced conduct credits for presentence custody he served from October 1, 2011 to the date of his sentencing, as he claims, because he committed his crime before October 1, 2011, the date the 2011 amendment became operative.  The second sentence of subdivision (h) provides:

> "Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."

9

Arguably, this second sentence of subdivision (h), if considered in isolation, could be construed as implying that any days of presentence conduct credit earned by a defendant after October 1, 2011, are to be calculated at the more favorable accrual rate rate provided by the amended statute, regardless of when the defendant committed his or her offense. However, to interpret subdivision (h)'s second sentence in this manner would impermissibly render its first sentence surplusage.

It is well-established that words used in a statute """must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.""" (*People v. Loeun* (1997) 17 Cal.4th 1, 9.) Furthermore, effect must be given to every word, clause and sentence of a statute, if possible. A statute "'should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.'" (*Rodriguez v. Superior Court* (1993) 14 Cal.App.4th 1260, 1269.)

Applying these principles, we cannot construe the second sentence of subdivision (h) to imply that any days of conduct credit earned by a defendant *after* October 1, 2011, shall be calculated at the enhanced accrual rate for an offense committed *before* October 1, 2011, because such an interpretation would render superfluous the part of subdivision (h)'s first sentence that plainly indicates the 2011 conduct credit amendment applies only to defendants whose crimes were committed "*on or after* October 1, 2011." (§ 4019(h), italics added.)

10

Our interpretation of section 4019(h) is supported by another well-established rule of statutory construction. "'A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole.'" (*People v. Rodriguez*, *supra*, 14 Cal.App.4th at p. 1268, quoting 2A Sutherland, Statutory Construction (5th ed. 1992) § 46.05, p. 103, fn. omitted.)

Here, as noted, the first sentence of section 4019(h) plainly reflects that the Legislature intended the enhanced conduct credit accrual rate to apply only to those defendants who committed their crimes *on or after* October 1, 2011. The second sentence of subdivision (h) does not explicitly extend that enhanced accrual rate to defendants who, like Sharif, committed their offenses *before* October 1, 2011, but are in local custody on or after October 1, 2011. To harmonize subdivision (h)'s second sentence with its first sentence, we must interpret the second sentence to be a legislative attempt, however inartful, to clarify that those defendants who committed an offense before October 1, 2011—but who are in local custody on or after October 1, 2011—are to earn conduct credit under the accrual rate provided by prior law, not the more favorable accrual rate provided by the amendment to section 4019 that became operative on that date. To construe section 4019 by considering in isolation the language of subdivision (h)'s second sentence and by disregarding the language of its first sentence would contravene well-settled principles of statutory construction and impermissibly disregard the Legislature's clear intent plainly expressed in the first sentence. Accordingly, we construe the second sentence of section 4019(h) as reaffirming that defendants who

11

committed their crimes before October 1, 2011, and are in presentence custody on or after that date, still have the opportunity to earn conduct credits, but under the accrual rate provided by prior law.

Citing *People v. Brown* (2012) 54 Cal.4th 314, Sharif asserts that California Supreme Court has "declared that credits for individuals in custody when the amendment [to section 4019] went into effect" on October 1, 2011, "should be calculated by a hybrid method: the former version of the law governs custody credit calculations before the amendment, and the amendment governs later custody credit calculations." Sharif's reliance on *Brown* is unavailing. *Brown* did hold that defendants whose presentence custody straddled the January 25, 2010 effective date of the previous amendment to section 4019 at issue in that case were entitled to earn conduct credits at two different rates, and thus the date when a defendant committed an offense is not dispositive. (See *Brown*, *supra*, 54 Cal.4th at pp. 322-323.) However, as the *Brown* court noted, the Legislature did not expressly declare whether the January 25, 2010 amendment was to apply retroactively or prospectively. (*Id*. at p. 320.) Here, the Legislature *did* expressly state that the current version of section 4019 is to apply prospectively only to defendants who commit their offenses on or after October 1, 2011. Thus, *Brown* has no application here.

We hold the enhanced presentence conduct credit accrual rate provided by the amendment to section 4019 that became operative on October 1, 2011, applies only to those defendants who committed their crimes on or after that date. (Accord, *People v.*

12

*Ellis* (2012) 207 Cal.App.4th 1546, 1548, 1553; *Rajanayagam*, *supra*, 211 Cal.App.4th at p. 52.)

## II.  *SECTION 2900.5(a)*

Sharif next contends the court erred when it failed to apply to his fines and fees—on a proportional basis and at the statutory rate of $30 per day of credit—the presentence custody credits he earned in excess of the 365 days of commitment to the custody of the Sheriff he was ordered to serve, as required by section 2900.5.

The Attorney General concedes, and we agree, that the court erroneously failed to reduce Sharif's fines by the monetary credit resulting from Sharif's excess presentence custody credits, as required by section 2900.5(a), which provides:

> "In all felony and misdemeanor convictions . . . when the defendant has been in custody, . . . all days of custody of the defendant, . . . including days . . . credited to the period of confinement pursuant to Section 4019, . . . *shall be* credited upon his or her term of imprisonment, or *credited to any fine on a proportional basis, including, but not limited to, base fines and restitution fines, which may be imposed, at the rate of not less than thirty dollars ($30) per day* . . . .  In any case where the court has imposed both a . . . jail term of imprisonment and a fine, any days to be credited to the defendant shall first be applied to the term of imprisonment imposed, and thereafter the *remaining days, if any, shall be applied to the fine on a proportional basis, including, but not limited to, base fines and restitution fines*."  (Italics added.)

As explained in *McGarry, supra,* 96 Cal.App.4th 644, the monetary credit resulting from excess presentence custody credit "must be used proportionally to reduce the base fine, penalty assessments and restitution fine rather than any one of these categories alone" (*id.* at p. 646) using a mathematical methodology set forth in that case,

13

and, "if the monetary credit does not eliminate all amounts due, the defendant still owes the remaining amount in each category." (*Id*. at pp. 646, 648-650.)

Here, the court committed Sharif to the custody of the sheriff for 365 days and properly determined he was entitled to a total of 594 days of credit for time he served in local presentence custody. Thus, Sharif had an excess presentence custody credit of 229 days (594 - 365 = 229), as the Attorney General correctly points out. (See *McGarry*, *supra*, 96 Cal.App.4th at p. 646.)

As the court erroneously failed to apply section 2900.5(a), as both parties point out, we reverse the judgment to the extent that the amounts of the base fines, penalty assessments, and restitution fines the court imposed at sentencing have not been reduced on a proportional basis by the monetary credit resulting from the excess of Sharif's total presentence actual and good conduct custody credits over his 365-day jail term, in accordance with the provisions of section 2900.5(a) and the methodology set forth in *McGarry*, *supra*, 96 Cal.App.4th at pages 648-650.

### III. *RESTITUTION FINE*

Sharif also contends the restitution fine imposed under section 1202.4(b) in the amount of $240 violates the ex post facto clauses of the federal and state Constitutions because he committed the current offense before January 1, 2012, when the amount of the fine increased from $200 to $240. This contention is unavailing because Sharif forfeited his claim by failing to object at his sentencing hearing.

14

"A defendant may not contest the amount, specificity, or propriety of an authorized order of a restitution fine for the first time on appeal." (*People v. Turrin* (2009) 176 Cal.App.4th 1200, 1207.)

Here, Sharif implicitly acknowledges he is contesting for the first time on appeal the amount and propriety of an order imposing a section 1202.4(b) a restitution fine. He asserts, however, that the restitution order is unauthorized and may be corrected on appeal because, although the fine was in the "proper range" the court was allowed to impose under section 1202.4(b), "it is clear that the trial court intended to calculate any restitution fine on the basis of the statutory minimum and, as such, it imposed the minimum statutory fine by selecting the new statutory minimum amount of $240."

However, as the Attorney General correctly points out, the record shows there was no plea agreement or other commitment by the court to impose the minimum fine. Rather, the record establishes that the probation report recommended a section 1202.4(b) fine in the amount of $240, and the court imposed it. Citing section 1202.4, subdivisions (b)(1), (b)(2), (c), and (d), the Attorney General argues that "[t]he sentencing court has the discretion to impose a fine of up to $10,000, after assessing factors deemed relevant, although the court is not required to conduct a hearing or to make express findings as to those factors." In cases such as the instant one in which the defendant is convicted of a felony, section 1202.4, subdivision (b)(1)[2] does authorize a sentencing court in its

[2]     Section 1202.4, subdivision (b)(1) as amended provides: "(b) In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and

15

discretion to impose a restitution fine in an amount not to exceed $10,000.  Here, as

Sharif acknowledges, the challenged $240 restitution fine is in the proper range the court

was authorized to impose under section 1202.4(b).  His speculative assertion that it is

"clear" the court "intended to calculate any restitution fine on the basis of the statutory

minimum," is not supported by the record.  As the fine he challenges is an authorized

order of a restitution fine, we conclude Sharif forfeited his claim by failing to object at

his sentencing hearing.  (See *People v. Turrin*, *supra*, 176 Cal.App.4th at p. 1207.)

### IV. *ALCOHOL-RELATED CONDITIONS OF PROBATION*

Last, Sharif contends the court erred in imposing alcohol-related conditions of

probation because they are not reasonably related to his offense or future criminality.

This contention is unavailing.

### A. *Applicable Legal Principles*

Under section 1203.1, a court granting probation may impose "reasonable

conditions, as it may determine are fitting and proper to the end that justice may be done,

that amends may be made to society for the breach of the law, . . . and generally and

specifically for the *reformation and rehabilitation* of the probationer . . . ."  (§ 1203.1,

subd. (j), italics added.)

---

states those reasons on the record.  [¶] (1) *The restitution fine shall be set at the discretion of the court* and commensurate with the seriousness of the offense.  If the person is convicted of a felony, the fine shall not be less than two hundred forty dollars ($240) starting on January 1, 2012, . . . and *not more than ten thousand dollars ($10,000)*. . . ."  (Italics added.)

16

A trial court's discretion in imposing conditions of probation, "although broad, nevertheless is not without limits:  a condition of probation must serve a purpose specified in the statute."  (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.)  In addition, the California Supreme Court has "interpreted [] section 1203.1 to require that probation conditions which regulate conduct 'not itself criminal' be 'reasonably related to the crime of which the defendant was convicted or to future criminality.' "  (*Ibid*.)

"Generally, '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, *and* (3) requires or forbids conduct which is not reasonably related to future criminality." ' "  (*People v. Olguin* (2008) 45 Cal.4th 375, 379, italics added, quoting *People v. Lent* (1975) 15 Cal.3d 481, 486.)  "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term."  (*Olguin*, at p. 379.)  Thus, "even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality."  (*Id*. at p. 380.)

"We review conditions of probation for abuse of discretion."  (*People v. Olguin*, *supra*, 45 Cal.4th at p. 379.)  A sentencing court abuses its discretion "when its determination is arbitrary or capricious or ""exceeds the bounds of reason, all of the circumstances being considered."""  (*People v. Carbajal, supra,* 10 Cal.4th at p. 1121.)

3. *Analysis*

Sharif challenges the following two terms of his probation:  (1) "Do not knowingly use or possess alcohol if directed by the [probation officer]"; and (2) "Submit to any chemical test of blood, breath, or urine to determine blood alcohol content and authorize release of results to [the probation officer] or the court whenever requested by the [probation officer], a law enforcement officer, or the court ordered treatment program."

Sharif claims these alcohol-related probationary terms should be stricken because they "are invalid because (1) there is no indication alcohol was involved in the instant offense; (2) the consumption of alcohol is not in itself criminal; and (3) there is no indication alcohol consumption is related to [his] possible future criminality."  He also asserts he has no record of alcohol abuse or dependence, and none of his previous crimes were alcohol-related.

Sharif's claim is unavailing.  The record shows he has a history of mental illness that involved several section 1368 proceedings.  The record also demonstrates Sharif has a history of drug abuse.  In addition, the record shows the court imposed a probationary condition requiring Sharif to attend and successful complete a psychiatric counseling program as directed by his probation officer.  In light of Sharif's history of mental illness and drug use, we conclude the court did not abuse its broad discretion by imposing the alcohol-related probationary terms, because the testing and no alcohol conditions of his probation are reasonably related to his rehabilitation and success on probation, and they are thus reasonably related to his possible future criminality.

18

The judgment is reversed to the extent the amounts of the base fines, penalty assessments, and restitution fines the court imposed at sentencing have not been reduced on a proportional basis by the monetary credit resulting from the excess of Sharif's total presentence actual and good conduct custody credits over his 365-day jail term, in accordance with the provisions of Penal Code section 2900.5, subdivision (a) and the methodology set forth in *People v. McGarry*, *supra*, 96 Cal.App.4th 644. In all other respects, the judgment is affirmed. We remand the matter for resentencing with directions to calculate and allocate the monetary credit in accordance with the provisions of Penal Code section 2900.5, subdivision (a) and the methodology set forth in *People v. McGarry*, *supra*, 96 Cal.App.4th 644. After the court enters its amended judgment, it shall amend the abstract of judgment to reflect that amended judgment and forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NARES, Acting P. J.

WE CONCUR:

McINTYRE, J.

IRION, J.

19